[No. 13960.    In Bank. — May 21, 1891.]

## WILLIAM G. RICHARDS ET AL., EXECUTORS, ETC., RESPONDENTS, v. THE TRAVELERS INSURANCE COMPANY, APPELLANT.

ACCIDENT INSURANCE — DEATH BY ACCIDENT — PLEADING — CAUSE OF ACTION. — In an action upon an accident insurance policy, an allegation in the complaint that the deceased sustained bodily injuries effected through external, violent, and accidental means, and that the death of deceased was occasioned by said injuries alone, the same state of facts being provided against by the policy, states a cause of action.

ID. — CONDITIONS PRECEDENT — NOTICE AND PROOFS OF DEATH — MATURITY OF CAUSE OF ACTION. — Where the policy provided that the money should be paid within ninety days after proof that the insured received injuries which alone "occasioned his death within ninety days from the happening thereof," averments in the complaint, that "more than ninety days had elapsed prior to the commencement of this suit, after sufficient proof that the insured, at a time within the continuance of the said policy, had sustained bodily injuries, effected through external, violent, and accidental means within the intent and meaning of said policy that such injuries alone had occasioned death within ninety days from the happening of such injuries," together with a general averment that the deceased and plaintiffs "have duly complied with all the terms and conditions of said policy and renewal by them, or either of them, to be kept or performed,"— sufficiently aver notice and proofs of death as required by the policy, and shows the maturity of the cause of action.

ID. — "ACCIDENT" DEFINED. — The word "accident," as used in accident policies, must be given its popular and common acceptation, and includes any casualty which takes place without the foresight or expectation of the person acted upon or affected by the event.

ID. — BLOW STRUCK BY THIRD PERSON — DEATH BY ACCIDENTAL MEANS. — Although the evidence leaves it doubtful as to whether the death of the insured was caused by a fall or by a blow struck by a third person, yet in either case the death is caused by "accidental means," within the

general terms of a policy providing against injuries or death caused through "external, violent, and accidental means."

ID. — UNDESIGNED DEATH CAUSED BY BLOW. — A provision, in an accident policy, that the insurance shall not be held to extend to any cause of death unless the claimant under the policy shall establish, by direct and positive proof, that the death was caused by external violence and accidental means, and was not the result of design either on the part of the insured or of any other person, merely states as a condition that the death shall not be caused by the act of one whose design was to cause death by the act, and does not include every case where a blow, not intended to kill, unfortunately and undesignedly produces death.

INSTRUCTIONS ALREADY GIVEN. — Instructions asked may be properly refused, if whatever was correct in them is given elsewhere.

APPEAL from a judgment of the Superior Court of Nevada County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*T. M. Osmont,* and *Fred Searls,* for Appellant.

Under the terms of the policy, the death must have been caused by accidental means. The insurance is not against accidental injuries, but against injuries occurring through accidental means. (*Southard* v. *Railway Passenger Assur. Co.,* 34 Conn. 574; *Barry* v. *United States M. Accident Ass'n,* 23 Fed. Rep. 714.) The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity; and in looking for the true meaning of the contract, every word must be accorded its just and proper meaning. (Civ. Code, secs. 1638, 1641, 1643; *Brickell* v. *Batchelder,* 62 Cal. 631.) A policy of insurance is to be construed like any other contract. Effect is to be given to the intention of the parties, when clearly expressed. (*Wells, Fargo & Co.* v. *Pacific Ins. Co.,* 44 Cal. 399, 406.) No recovery can be had in this case, as death resulted from a blow intentionally struck, and the *onus* is on plaintiffs to prove absence of design. (*Travelers Ins. Co.* v. *McConkey,* 127 U. S. 661; *Hutchcraft's Ex'r* v. *Travelers Ins. Co.,* 87 Ky. 300; 12 Am. St. Rep. 484; *De Graw* v. *National Accident Soc.,* 51 Hun, 142; *De Graw*

v. *National Accident Soc.*, 4 N. Y. Super. Ct. 912.) The plaintiffs must make out their case under the policy, and in accordance with its terms, and the *onus* is where the parties to the contract have placed it, such contract being a law unto themselves, and as binding as any other stipulation contained in it. (See *United States* v. *Robeson*, 9 Pet. 319, 327.)

*C. W. Cross*, and *P. F. Simonds*, for Respondents.

The allegations of the complaint, that plaintiffs duly performed, etc., are sufficient to cover the matter of notice and proofs of loss. (Code Civ. Proc., sec. 457; *Scheiderer* v. *Travelers Ins. Co.*, 58 Wis. 13; 46 Am. Rep. 618; *Schobacher* v. *Germantown Ins. Co.*, 59 Wis. 86; *Doyle* v. *Phœnix Ins. Co.*, 44 Cal. 264; *Blasingame* v. *Home Ins. Co.*, 75 Cal. 633; *Cowan* v. *Phœnix Ins. Co.*, 78 Cal. 181; *Ferrer* v. *Home Mut. Ins. Co.*, 47 Cal. 416.) But even if the allegations of the complaint are insufficient, the answer alleges that the defendant is not liable at all, and thereby the company waives all proofs of loss. (*New Home L. Ass'n* v. *Hagler*, 23 Ill. App. 457–461; *Williamsburg City Ins. Co.* v. *Cary*, 83 Ill. 453; *Home Ins. Co. of Texas* v. *Myer*, 93 Ill. 271; *Peoria M. & F. Ins. Co.* v. *Whitchall*, 25 Ill. 466, 470.) The term "accidental," in policies of accident insurance, means that an injury is an accident as to the insured, when it does not result from the insured's design or co-operation. (Bliss on Life Insurance, p. 705, par. 396; *Ripley* v. *Railway Passenger Assur. Co.*, 2 Bigelow's Life & Acc. Ins. Cas. 738; 1 Am. & Eng. Ency. of Law, p. 87, sec. 3; 7 Am. Law Rev. 587–590; *Mallory* v. *Travelers Ins. Co.*, 47 N. Y. 52; 7 Am. Rep. 410; *Supreme Council of Order of Chosen Friends* v. *Garrigus*, 104 Ind. 137; 54 Am. Rep. 298.) The instruction to the jury, that "if the death of Philip Richards was caused by a blow dealt him by H. J. Dassonville or some other person, that would not prevent plaintiffs from recovering in this action, if you believe, from the

evidence, that when Dassonville or such other person inflicted such blow he did not mean to kill said Philip Richards," was not erroneous. (*Utter* v. *Travelers Ins. Co.*, 65 Mich. 545.)

McFARLAND, J. — This is an action upon an accident insurance policy. By the terms of the policy, the insured — Philip Richards — was to have a sum of money paid him weekly in case of injury to him by accident, and his estate was to be paid five thousand dollars in case of his death from such injury. During the life of the policy said Richards was killed. The jury returned a verdict in favor of plaintiffs, executors of said Richards, deceased, for five thousand dollars, and defendant appeals from the judgment, and from an order denying a new trial.

1. We think that the complaint is sufficient. There was no formal demurrer, but defendant objected to a jury being impaneled, and to the introduction of any evidence, upon the ground that "the complaint does not state facts sufficient to constitute a cause of action." The first objection is, that the complaint does not state the particular circumstances under which the death of the insured occurred; that is, whether it was caused by lightning, drowning, railroad collision, etc. But the complaint avers that at a named date the deceased "sustained bodily injuries effected through external, violent, and accidental means, and that on, to wit, the twenty-seventh day of May, 1887, the said Philip Richards died at Nevada City, Nevada County, California, and that the said death was occasioned by said injuries alone." This language, which avers a state of facts expressly provided against by the covenants of the policy, is sufficient as against an attack which is no more specific than a general demurrer.

The other objection to the complaint is, that it does not aver notice and proofs of death as required by the

policy. But it is averred that "said Philip Richards and said plaintiffs have duly complied with all the terms and conditions of said policy and renewal by them, or either of them, to be kept or performed"; and this was generally a sufficient pleading of conditions precedent. (Code Civ. Proc., sec. 457; *Blasingame* v. *Home Ins. Co.*, 75 Cal. 633.) It has been held in some cases that where money covered by an insurance policy is not to be paid until a certain time after the loss, or after notice and proofs of the same, there should be a special averment that such time had elapsed. In the case at bar there was a provision in the policy that the money should be paid "within ninety days" after proof that the insured received injuries which alone "occasioned his death within ninety days from the happening thereof," and with respect to this matter, it is alleged in the complaint that "more than ninety days had elapsed prior to the commencement of this suit, after sufficient proof that the insured, at a time within the continuance of the said policy, had sustained bodily injuries effected through external, violent, and accidental means, within the intent and meaning of said policy, that such injuries alone had accasioned death within ninety days from the happening of such injuries." This averment, together with the general averment above noticed, makes the complaint entirely sufficient as against a general demurrer.

2. Upon the merits, appellant contends that the verdict was not justified by the evidence, and that the court erred in its instructions to the jury.

The deceased lived at Nevada City, and was brought by one H. J. Dassonville to the drug-store and office of a physician in that city about nine o'clock on the evening of April 22, 1887. He was suffering from a severe wound on the head and over the left eye, from the effect of which he died on the 27th of the next month, May, 1887. There was evidence tending to show that the

wound was caused by a fall from an elevated sidewalk down onto Spring Street, in which there were rocks and piles of old iron; but appellant contends that the evidence shows the wound to have been inflicted by said Dassonville, who, after a failure to blackmail the deceased, suddenly struck him a blow with some instrument or thing capable of producing the wound.

The general terms of the policy provide against injuries or death caused through " external, violent, and accidental means." The means by which the death of the deceased was caused were certainly " external and violent"; and while there was not much evidence to show that it was caused by a blow from Dassonville, still, in that case, the jury had the right, under the evidence, to find it " accidental," within the general covenants of the policy. It is impossible to give a precise definition of the word " accidental." As every effect has a cause, there is one sense in which nothing is accidental.

Accident policies are of recent origin, and there have been only a few judicial decisions with respect to them. But the authorities to be found on the subject seem to be to the point that " accident " must be given its popular meaning; that is, a casualty — something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured. The fullest discussion of the subject is to be found in the opinion of the United States circuit court for the district of Michigan, in the case of *Ripley* v. *Railway Company*, 2 Bigelow's Life & Acc. Ins. Cas. 738. In that case the insured had been attacked by highwaymen, and killed, and it was contended that as the *highwaymen intended* violence, there was no accident. The learned judge (Withey, J.), in delivering the opinion of the court, says: " Perhaps, in a strict sense, any event which is brought about by design of any person is not an accident, because that

which has accomplished the intention and design, and is expected, is a foreseen and foreknown result, and therefore not strictly accident. Yet I am persuaded this contract should not be interpreted so as thus to limit its meaning; for the event took place unexpectedly, and without design on Ripley's part. It was to him a casualty, and in the more popular and common acceptation, ' accident,' if not in its precise meaning, includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.* . . . . I think, in construing a policy of insurance against accident, issued to all sorts of people, a majority of whom do not, as the company well knew, nicely weigh the meaning of words and terms used in it, courts are called upon to interpret the contract as a large class not versed in lexicology are sure to regard its terms and scope. That which occurs to them unexpectedly is by them called accident. The company fix the terms of the contract, and are to be held, in the absence of plain unequivocal exceptions and provisions, to intend what, in popular acceptation, the insured party is likely to understand by its terms." In that case judgment went for defendant upon another point, and was affirmed by the United States supreme court, where the meaning of "accident" was not discussed (16 Wall. 336); but the language of Judge Withey seems to us to express correct views of the question. It is quoted approvingly in other authorities. (Bliss on Life Insurance, sec. 438; 7 Am. Law Rev. 587; 1 Am. & Eng. Ency. of Law, p. 87, sec. 3, and notes; 32 Md. 315.) We are of opinion, therefore, that if it could be considered that, in the case at bar, the death of the deceased was caused by a blow from Dassonville, still it was caused by "accidental means," within the general terms of the policy.

The policy, however, contains a special condition, as follows: " This insurance shall not be held to extend to disappearances, or to any cause of death, or personal in-

jury, unless the claimant under the policy shall *establish by direct and positive proof* that the said death or personal injury was caused by external violence and accidental means, and was not the result of design either on the part of the insured or *of any other person."* Respondent contends that this clause is a mere attempt to change the rules of evidence, and therefore entirely void; that it is not a provision about anything *except evidence.* We do not think it necessary to examine this contention. Taking the provision as valid, it merely states as a condition, so far as it applies to the circumstances of this case, that the death shall not be the result of the design of any person; that is, that it must not be caused by the act of one whose design was to cause death by the act. The point was presented by the fifth instruction given by the court, as follows: " If the death of Philip Richards was caused by a blow dealt him by H. J. Dassonville, or some other person, that would not prevent plaintiffs from recovering in this action, if you believe from the evidence that when Dassonville or such other person inflicted such blow, he did not mean to kill said Philip Richards." We are of opinion that this instruction is not erroneous.

There were circumstances in evidence tending to show that if Dassonville did give the blow which resulted afterwards in the death of deceased, he did not intend such result. And it would not be a correct construction of the clause of the policy under review to say that it includes every case where a blow, not intended to kill, unfortunately and undesignedly produces death, and particularly when we consider the rules of construction which apply to the makers of instruments.

The other instructions of the court seem to be unobjectionable, and to present the law of the case very fully. Those given at the request of the defendant presented that side of the case very favorably. Instructions No. 1 and No. 5, asked by defendant, were properly re-

fused; whatever was correct in them was given else-where.

The judgment and order appealed from are affirmed.

GAROUTTE, J., DE HAVEN, J., HARRISON, J., and PATERSON, J., concurred.

Rehearing dénied.