*Supp. 968
 
 KAUFFMAN, J.
 

 This is an appeal by plaintiff from a judgment in favor of defendant, entered in an action upon an insurance policy wherein plaintiff was the insured and defendant the insurance company which provided for liability for property damage suffered by third persons and growing out of the operation of plaintiff’s business. No disputed questions of fact are involved.
 

 The appellant owned and operated a laundromat business. Appellant entered into an insurance contract with respondent which provided among other things as follows: “To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of the use thereof, caused by accident and arising out of the ownership, maintenance or use of premises for the purposes stated in the declarations, or operations necessary or incidental thereto.”
 

 The use of the premises was declared to be that of a laundromat or self-service laundry and a premium was computed and paid for the coverage specified. The policy further provided, “the company (defendant) shall defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent” etc.
 

 During the time the insurance was in effect, the appellant herein was sued by an adjoining tenant (Shuls) who alleged in his complaint “that appellant in the operation of the driers used in his business permitted lint to be blown upon the roof of the building occupied by said Shuls and that lint was deposited in drains which became clogged and that on January 19-1954 when a rain occurred, water leaked into Shuls’ premises as the result of the negligence of appellant in permitting lint to escape and clog the drains, ’ ’ and prayed for damages. The complaint also alleged that appellant was notified of these facts and agreed to install a lint catcher, but later failed to do so.
 

 Appellant delivered complaint to respondent and requested it to defend, but respondent refused to defend on the ground that the claim was not a peril covered by the insurance policy.
 

 It is admitted that as a result of this suit appellant was required to pay $1,430.84 as damages and $400 as legal fees, and $69.20 costs, all of which were found by the trial court below to be necessary and reasonable.
 

 The court concluded from the facts above found that the
 
 *Supp. 969
 
 damages to Shuls, although appellant was obligated to pay, were not caused by accident, and further concluded that respondent was under no obligation to defend the appellant in the Shuls case.
 

 We will first discuss the question, Was the respondent (insurance company) required to defend appellant in the action for damages to personal property brought by Shuls against appellant? It is stated in
 
 Lamb
 
 v.
 
 Belt Casualty Co.
 
 (1935), 3 Cal.App.2d 624, page 630 [40 P.2d 311] : In determining whether or not respondent was bound to defend, “The language of its contract must be first looked to, and next, the allegations of the complaints . . . for damages against the insured.” The complaint herein clearly alleges damages from an alleged negligent operation of the driers used in the business conducted by appellant, causing lint to be blown upon the roof of the building occupied by Shuls, and that lint was deposited in drains which became clogged and when rain occurred water leaked into Shuls’ premises as a proximate result of appellant’s negligence, etc.
 

 The policy provided that the insurance company would pay as follows: “To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury or destruction of property, including the loss of use thereof caused by accident and arising out of the ownership, maintenance or use of the premises for the purposes stated in the declarations, or operations necessary or incident thereto.”
 

 It is clear that the operation of the drier which caused lint to be deposited on the roof and in drains was a necessary operation in the laundromat business. In the recent case of
 
 Ritchie
 
 v.
 
 Anchor Casualty Co.
 
 (1955), 135 Cal.App.2d 245 [286 P.2d 1000], it was also held, page 250, “that the insurer’s obligation to defend is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured,” citing the
 
 Lamb
 
 v.
 
 Belt
 
 case. We have concluded that there was a duty under the policy and under the facts stated in the pleading served on the insured to defend appellant in the action for damages filed against him. The second question presented is whether or not the contract of insurance, the pertinent provisions of which have heretofore been quoted, covered the claim for damages against appellant by reason of his negligent operation of the drier as set forth in the complaint against him.
 

 It is claimed by respondent, and held by the trial court.
 
 *Supp. 970
 
 that this claim under the complaint by Shuls for damages against appellant was not caused by accident, and hence was not covered by the policy. We are unable to agree with this conclusion of law.
 

 The .latest expression of the appellate courts of. California concerning the definition of the word “accident” is found in
 
 Ritchie
 
 v.
 
 Anchor Casualty Co., supra.
 
 In that case the insured purchased a policy of insurance which provided by endorsement to the policy that the policy was extended to cover “the liability imposed upon the insured by law for damages because of injury to or destruction of property, including the loss of use thereof caused by accident and arising out of” the condition of the goods distributed by the insured if the accident occurred after the insured had parted with possession. The language quoted is strikingly similar to the language which imposes liability on the insured in the case at bar and which has been heretofore quoted. In each case the insured agreed to pay for damages because of injury to or destruction of property caused by accident. The insured in the Ritchie case sold peanut oil to the Post Trading Company. The buyer refused to pay, claiming that the oil was rancid and that it had suffered damage through its use. The insurer was asked to defend, and the insurer refused to defend on the ground that the action was not covered by the policy. The trial judge found that the allegations of the cross-complaint did not allege an “accident.” The insured appealed and the District Court of Appeal reversed the judgment. After finding that the insured’s liability to defend depended upon the wording of the insurance contract and the allegations of the pleading, a point which we have already discussed and for which we cited as authority this case, the court proceeded to consider whether the cross-complaint in question alleged an accident. The cross-complaint was based upon five causes of action, two of which alleged an express warranty and three of which alleged an implied warranty of fitness. The court then held that the pleading did factually allege an accident, even though that word was not used, commenting that the draftsman of a complaint is not interested in the question of coverage which may later arise between the insurer and the insured. The court went on to say, at page 251 of the opinion, we quote: “He chooses such theory as best serves his purpose; if it be breach of contract rather than negligent performance of contract, he chooses the former; if it be negligence rather than warranty he
 
 *Supp. 971
 
 alleges negligence; if he happens to choose warranty it may be an express one or one implied. And when the question later arises under an insurance policy as to what the facts alleged in the complaint do spell, —for instance, whether they aver an accident, —the complaint must be taken by its four corners and the facts arrayed in a complete pattern without regard to niceties of pleading or differentiation between different counts of a single complaint. And the ultimate question is whether the facts alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.”
 

 The court then stated, “It is settled that ‘in ease of doubt such doubt ought to be resolved in the insured’s favor.’ ” quoting in this connection
 
 Boyle
 
 v.
 
 National Cas. Co.,
 
 (D.C.) 84 A.2d 614, 616;
 
 Lee
 
 v.
 
 Aetna Casualty & Surety Co.,
 
 178 F.2d 750; and
 
 Pow-Well Plumbing & Heating, Inc.
 
 v.
 
 Merchants Mut. Casualty Co.,
 
 195 Misc. 251 [89 N.Y.S.2d 469],
 

 The court then stated that allegations that the insured manufactured the oil knowing the intended use; that previous purchases of oil from the insured had been satisfactory; that the oil was used in preparation of food products; that it was not fit for the intended use; that it was used without knowledge that it was rancid; that its condition was not discovered until after use; that the use caused damage, all alleged an accident within the law applying to insurance policies worded like the one under discussion. The court then cited
 
 Richards
 
 v.
 
 Travelers' Ins. Co.,
 
 89 Cal. 170 [26 P. 762, 23 Am.St.Rep. 455], quoting from the decision at length to the effect that an accident includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event. The court in the Richards case quoted with approval language from
 
 Ripley
 
 v.
 
 Railway Co.,
 
 2 Bigelow’s Life & Acc. Ins. Gas. 738, to the effect that any event brought about by design is not truly an accident because that which has accomplished the intention and design is a foreseen and foreknown result. Yet the contract should not be so interpreted since, if it happened unexpectedly to the person damaged, it is to him a casualty. This is the common and popular conception of the word “accident” and since insurance policies are issued to all sorts of people who do not nicely weigh the meanings of words the court is called upon to interpret terminology as such people regard it. To the average person that which occurs un
 
 *Supp. 972
 
 expectedly is called an accident. Insurance contracts, in the absence of plain and unequivocal exceptions are construed to intend that which the insured is likely to understand. The court then cites as having accepted this construction of the meaning of the word “accident” the following California cases:
 
 Rock
 
 v.
 
 Travelers' Ins. Co.,
 
 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E
 
 1196]; Price
 
 v.
 
 Occidental Life Ins. Co.,
 
 169 Cal. 800, 802 [147 P. 1175]; O
 
 linsky
 
 v.
 
 Railway Mail Assn.,
 
 192 Cal. 669, 671 [189 P. 835, 14 A.L.R. 784];
 
 Ogilvie
 
 v.
 
 Aetna Life Ins. Co.,
 
 189 Cal. 406, 411-412 [209 P. 26, 26 A.L.R. 116]. The Supreme Court in a recent case has defined “caused by accident” as follows, in
 
 Zuckerman
 
 v.
 
 Underwriters at Lloyd's London,
 
 42 Cal.2d 460, 473 [267 P.2d 777]: “ ‘Accident’ has been defined as ‘a casualty —something out of the usual course of events and which happens suddenly and unexpectedly and without any design of the person injured. ’
 
 (Rock
 
 v.
 
 Travelers' Ins. Co.,
 
 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196];
 
 Richards
 
 v.
 
 Travelers' Ins. Co.,
 
 89 Cal. 170 [26 P. 762, 23 Am.St.Rep. 455].” The proper test is, did the insured operate negligently which resulted in an event which was unexpected or unforeseen by the person injured ? If such a state of affairs appears from the pleading served upon the insured, considering all the facts stated in the complaint with doubts resolved against the insurance company, then a claim has been alleged which is covered by the policy and the insurer is obligated to defend. The most recent expression of the California Supreme Court requiring the court to construe ambiguities in favor of the insured and against the insurer is found in
 
 Arenson
 
 v.
 
 National Automobile & Cas. Ins. Co.,
 
 45 Cal.2d 81, 83 [286 P.2d 816], wherein it is stated:
 

 “The understanding of an ordinary person is the standard used in construing a contract of insurance, and any ambiguity in language must be resolved against the insurer.
 
 (Ransom
 
 v.
 
 Penn Mut. Life Ins. Co.,
 
 43 Cal.2d 420, 424-425 [274 P.2d 633].) It is also the rule that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured.
 
 (Mah See
 
 v.
 
 North American Acc. Ins. Co.,
 
 190 Cal. 421, 424-425 [213 P. 42, 26 A.L.R. 123];
 
 Pacific Heating & Ventilating Co.
 
 v.
 
 Williamsburg City Fire Ins. Co.,
 
 158 Cal. 367, 369-370 [111 P. 4].)”
 

 The judgment for defendant is reversed, and judgment should be entered by the trial court for plaintiff as prayed.
 

 Swain, Acting P. J., and Patrosso, J., concurred.