David BAKER and Lee J. Baker, Plaintiffs,

v.

The AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY, Defendant.

No. AC/776.

United States District Court
E. D. South Carolina,
Columbia Division.

Jan. 4, 1963.

354

Donald V. Richardson, III, Thomas E. McCutchen, Whaley & McCutchen, Columbia, S. C., for plaintiffs.

W. Ray Berry, J. Monroe Fulmer, Fulmer, Barnes & Berry, Columbia, S. C., for defendant.

WYCHE, District Judge.

The above case is now before me upon motion of the defendant to set aside the verdict entered in the above entitled matter on October 31, 1962, and the judgment entered thereon on November 7, 1962, and to enter judgment in favor of the defendant in accordance with the motion for a directed verdict made by the defendant at the close of all the testimony herein on the grounds that: " (a) Under the laws of this jurisdiction, the liability of the Defendant is to be determined by

the pleadings in the action brought in the State Court and these pleadings show conclusively that the damages suffered by the adjoining landowners which gave rise to the liability of the Plaintiffs did not occur as the result of an accident. (b) The testimony is susceptible of but one conclusion and that is that the damages sustained by the adjoining landowners which gave rise to the liability of the Plaintiffs was the results of acts persistently and continuously done by the Plaintiffs, their servants and agents, and the damages to said landowners were the normal consequences thereof and the damages were therefore not caused by accident. (c) The testimony shows conclusively that the damage suffered by the adjoining landowners which gave rise to the liability of the Plaintiffs occurred over a long period of time and could, therefore, not have been the result of an accident and therefore not within the coverage of the insurance policy issued by this Defendant. (d) The testimony shows conclusively that the damages sustained by the adjoining landowners which gave rise to the liability of the Plaintiffs was the result of acts which were intentional, deliberate, long continued and unnecessary, consisting perhaps of negligence but devoid of any suggestion of accident and were, therefore, not within the coverage of the insurance policy issued by the Defendant."

And, "In the alternate, the Defendant moves the Court to set aside the verdict and the judgment entered thereon and grant the Defendant a new trial on the following grounds: (a) In that the Court erred in allowing the Plaintiffs to introduce testimony in that the liability of the Defendant, if any, is to be determined by the allegations of the Complaint of the landowners in such action. (b) In that the Court erred in refusing to charge Defendant's Request to Charge Nos. 1, 6 and 7."

Midland Shopping Center, consisting of seventeen acres, is located within the City limits of Columbia, South Carolina, and was developed by the plaintiffs Lee J. Baker and David Baker. The plaintiffs purchased from the defendant The American Insurance Company of Newark, New Jersey, a "comprehensive liability policy" of insurance, insuring the plaintiffs against such loss which they should become obligated to pay as damages because of injury to, or destruction of property caused by accident. The policy further provided that the defendant would defend any suit against the plaintiffs alleging such destruction and asking damages on account thereof, even if such suit be groundless, false or fraudulent. This policy was in effect at all times relevant to this action.

Prior to the preparation of the site for construction thereon of the shopping center, the plaintiffs engaged competent engineers to plan for the drainage of surface water from the building site. Detailed plans and specifications for the construction were submitted to the City of Columbia, as required for approval. The plaintiffs secured a building permit from the City of Columbia which authorized the drainage of surface water from the premises into Covenant Road (a paved public street) and into open drainage ditches maintained by the City of Columbia adjacent to the building area. It was necessary that the shopping center site be stripped of all vegetation prior to grading. Most of the terrain was uneven, unimproved and required the leveling and filling in of the area before buildings could be erected. While the work was in this critical and vulnerable state the City of Columbia experienced heavy, sustained and unprecedented rain between June, 1959, and October, 1959, which flowed over the plaintiffs' denuded seventeen acres resulting in water damage to the adjacent landowners. The rains during this four-month period of time were so severe that asphalt from the city streets washed out and covered the storm-sewers causing the surface water from the construction site to cross the street and flow downhill onto the land of the adjacent property owners. The open drainage ditch which was adjacent to Covenant Road and constituted the southern boundary of the shopping center area

also completely filled with mud and debris causing the surface water from the shopping center area to flow across the city streets down onto the adjacent property owners. This drainage ditch was approximately three feet in depth and filled within a relatively short period of time because of the severe, heavy and unprecedented rain.

The plaintiffs were subsequently sued in the State Court by adjacent property owners who sustained damage during the period of unprecedented rainfall, allegedly as a result of the changed condition of plaintiffs' property at the construction site. The plaintiffs timely tendered the suit papers and made demand upon the defendant to defend these suits against them under the aforesaid policy of insurance, but the defendant refused, contending that the losses were not "caused by accident". The plaintiffs then employed counsel and undertook their own defense. The actions by the adjoining landowners were subsequently settled by the plaintiffs, after demand upon the defendant to settle the same, which the defendant refused to do.

The plaintiffs thereafter brought suit in this court for the recovery of the sums spent by them in the defense of the State Court actions and for the sums spent in the settlement of those actions. Upon trial the jury returned a verdict for the plaintiffs and the defendant now moves for judgment notwithstanding the verdict or in the alternative for a new trial upon the grounds heretofore stated.

The principal questions to be determined by me are whether or not the defendant was bound to defend the State Court actions and whether or not the testimony sustains the inference that the loss of the plaintiffs was caused "by accident".

■ The duty of an insurance company to defend is only against litigation in which a recovery is sought against the insured for a cause of action arising within the coverage of the policy. An insurance company is under no obligation to defend a suit where the allegations of the complaint do not state facts to bring the case within the coverage of the policy, or when the cause of action alleged in the complaint is not one on which the insurance company would be liable in the event judgment were recovered in that action. Lumbermens Mut. Casualty Co. v. C. Y. Thomason Co., 87 F.Supp. 889 (D.C.S.C.1950), affirmed, 183 F.2d 729 (C.A. 4, 1950); Glens Falls Indemnity Co. v. Atlantic Bldg. Corp., 199 F.2d 60 (C.A. 4, 1952); Stout v. Grain Dealers Mutual Insurance Company, 307 F.2d 521 (C.A. 4, 1962).

The first suit brought against the Bakers in the State Court alleged in the First Cause of Action that the Bakers had knowledge of the surrounding terrain and that they deliberately and wilfully altered their seventeen-acre-lot of land so as to cause surface water to be discharged on and over their land; the Second Cause of Action alleged that the Bakers were negligent and wilful in grading their seventeen-acre-lot; in grading, ditching, constructing a concrete wall, in failing to provide adequate facilities for carrying off surface water, in failing to avoid injury to adjacent landowners after notice and constructing a concrete wall, ditches and driveways when they knew that the drainage systems of the City of Columbia were inadequate, in failing to have a general contractor, and in constructing the shopping center in wilful disregard of the rights of others; in the Third Cause of Action the adjoining landowners alleged that the acts complained of constituted a nuisance. The complaint sought a total judgment against the Bakers for $100,-000.00, actual and punitive damages.

■ "Negligence" is not synonymous with the word "accident", however, that does not mean that negligence precludes a loss from being accidental. C. Y. Thomason Co. v. Lumbermens Mutual Casualty Co., 183 F.2d 729 (C.A. 4, 1950).

■ Since the complaint in the State Court action alleged a cause of action for negligence the defendant was bound to defend. Lumbermens Mut. Casualty Co.

v. C. Y. Thomason Co., 87 F.Supp. 889 (D.C.S.C.1950), affirmed, 183 F.2d 729 (C.A. 4, 1950); Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc., 128 S.E.2d 19 (N.C.1962). Each count of the complaint constitutes a complete cause of action on which the adjoining landowners could have recovered whether the allegations of wilfulness, recklessness or wantonness were included or left out of the pleading. In other words, it was obvious to the insurer upon the reading of the complaint that it was not essential to recovery that the Bakers wilfully, recklessly or wantonly caused the damage to the adjacent landowners, because they could recover damages from the Bakers based solely upon negligence. Employers Mut. Liability Ins. Co. of Wis. v. Hendrix, 199 F.2d 53 (C.A. 4, 1952), 41 A.L.R.2d 424. The adjoining landowners could also have recovered from the Bakers even though something unforeseen, unexpected or unusual occurred, which produced the injury after the construction of the shopping center had started. Metropolitan Life Insurance Co. v. Henkel, 234 F.2d 69 (C.A. 4, 1956).

The testimony during the trial of the case conclusively established that the defendant was apprised of all of the circumstances attending the loss to the adjacent landowners. The defendant sent its adjuster to the scene of the construction site and he conducted an investigation there. The Bakers constantly kept the defendant advised by correspondence and also through its general insurance agent of the exact nature of the complaints by, and the losses to, the adjacent landowners. The defendant had knowledge of actual facts brought to its attention which established that the pertinent allegations contained in the complaints against the Bakers were not true. American Motorists Ins. Co. v. Southwestern Greyhound Lines, 283 F.2d 648 (C.A. 10, 1960).

It is, therefore, my opinion that the defendant should have undertaken the defense of the actions against the Bakers when notified.

Among the plaintiffs' witnesses was an impressive array of engineering talent. These witnesses consisted of an architect, the general superintendent at the construction site, the head of an engineering consultant firm which prepared the plans and specifications for the draining of the area, the head meteorologist in charge of the United States Weather Bureau, the City Engineer, an engineer who had prepared a graphic presentation showing the amount of rainfall over the four-month period, and a general contractor who had had long experience in the heavy construction work. The plaintiffs also testified. The testimony showed that the shopping center was constructed in accordance with the best engineering principles, that the plaintiffs did everything within their power to mitigate, or to stop the water damage to the adjacent landowners, that the damages to the adjacent landowners were unforeseen, undesigned, unusual and unexpected. It is also uncontradicted that the heavy, unprecedented, torrential downpour of rain between June, 1959, and October, 1959, was an element which was unforeseen, unexpected and unusual.

■ The phrase "caused by accident" has the same meaning for the purposes here as the phrase "accidental means" which so frequently appears in policies of insurance. Thomason v. United States Fidelity & Guaranty Co., 248 F.2d 417 (C.A. 5, 1957). In a number of jurisdictions a distinction has been drawn between the terms "accidental means" and "accidental result". Basically, the distinction is grounded on the idea that "means" is synonymous with "cause"; that the difference between "accidental means" and "accidental result" is the difference between cause and effect; that insurance against injury by "accidental means" is not insurance against injury by accident or as an accidental result; and that hence injury is not incurred by "accidental means" merely because the effect or result is accidental in the sense that it is unforeseen, undesigned, unusual and unexpected. 166 A.L.R. 469, 471; 29

Am.Jur., Insurance, Sec. 1165, p. 309. This distinction was described by Mr. Justice Cardozo in his dissenting opinion in Landress v. Phoenix Ins. Co., 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934, as a "Serbonian Bog". South Carolina has adopted the "accidental result" theory. Goethe v. New York Life Ins. Co., 183 S. C. 199, 190 S.E. 451 (1937); Ducker v. Central Surety & Ins. Corp., 234 S.C. 228, 107 S.E.2d 342 (1959). The words "by accident" and "an accident" as used in the South Carolina Workmen's Compensation Act and the words "accidental means" as used in insurance policies are synonymous. Layton v. Hammond-Brown-Jennings Co. et al., 190 S.C. 425, 3 S.E.2d 492, 496 (1939). The decisions under the South Carolina Workmen's Compensation Act construing the words "by accident" and "an accident" affirm the accidental result theory. Portee v. S. C. State Hospital, 234 S.C. 50, 106 S.E.2d 670.

There is no contention by the defendant that the losses sustained by the adjacent landowners were intentional on the part of the plaintiffs. The undisputed facts show that the losses sustained by adjacent landowners were completely unexpected, unforeseeable, extraordinary and not intentional. Therefore, under the "accidental result" theory the defendant would be obligated to pay any judgment which might be awarded thereon.

Because the damage resulted from negligence, a concept which carries with it the element of foreseeability, does not deprive the occurrence of its accidental nature. Although an intentional or wilful tort would negative the existence of an accident, an act attributed solely to negligence may be an accident. Larsen v. General Cas. Co. of Wisconsin, 99 F. Supp. 300 (D.C.Minn.1951); Rex Roofing Company, Inc. v. Lumber Mutual Casualty Ins. Co. of New York, 280 App.Div. 665, 116 N.Y.S.2d 876 (1952); Cross v. Zurich General Accident & Liability Ins. Co., 184 F.2d 609 (C.A. 7, 1950); Aetna Casualty & Surety Company v. Starrett, 102 Ga.App. 278, 115 S.E.2d 641 (1960); Employers Insurance Company of Ala-

bama, Inc. v. Rives, 264 Ala. 310, 87 So. 2d 653 (1955); C. Y. Thomason Co. v. Lumbermens Mutual Casualty Co., 183 F.2d 729 (C.A. 4, 1950); Minkov v. Reliance Insurance Company of Philadelphia, 54 N.J.Super. 509, 149 A.2d 260 (1959); Knight v. L. H. Bossier, Inc., 118 So.2d 700 (La.App.1960); Moore v. Fidelity & Casualty Company of New York, 140 Cal.App.2d Supp. 967, 295 P. 2d 154 (1956); Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc., 128 S.E. 2d 19 (N.C.1962); Standard Oil Co. of New Jersey v. United States, 264 F. 66, 12 A.L.R. 1404 (C.A. 4, 1920); Robert Hawthorne, Inc. v. Liberty Mutual Ins. Co., 150 F.Supp. 829 (D.C.Penn.1957); Hardware Mutual Ins. Co. of Minn. v. C. A. Snyder, Inc., 242 F.2d 64 (C.A. 3, 1957).

The plaintiffs are entitled to recover upon the further ground that even in "an accidental means" jurisdiction a loss is likewise covered if in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury. Here the grading of the area was the act which preceded the injury within the rule as above stated; and, in that act "something unforeseen, unexpected and unusual" occurred which produced the injury, namely the heavy, unprecedented, torrential downpour of rain between June, 1959, and October, 1959. Midland Const. Co. v. United States Cas. Co., 214 F.2d 665 (C.A. 10, 1954); Hutchinson Water Co. v. United States Fidelity & G. Co., 250 F.2d 892 (C.A. 10, 1957); Metropolitan Life Insurance Co. v. Henkel, 234 F.2d 69 (C.A. 4, 1956); it should also be noted that at least one circuit has now modified the rule that the natural and ordinary consequences of a negligent act do not constitute an accident. In Hutchinson Water Co. v. United States Fidelity & G. Co., 250 F.2d 892 (C.A. 10, 1957), the court said: "Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then

by the same logic, there would be no liability where the damage was the unexpected, hence unforeseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence no liability upon the insured for his negligent acts. In either instance, the insurer would be free of coverage and the policy would be rendered meaningless." See, also, Albuquerque Gravel Prod. Co. v. American Emp. Ins. Co., 282 F.2d 218 (C.A. 10, 1960).

The testimony is also undisputed that the loss to the adjacent property owners did not occur over a long period of time. As soon as the heavy, sustained and unprecedented rainfall stopped the construction site was completed and no further water damages occurred to any of the adjacent property owners. This case does not fall within the rule of United States Fidelity & Guaranty Co. v. Brisco, 239 P.2d 754 (Okla., 1951), and American Cas. Co. of Reading, Pa. v. Minnesota F. B. S. Co., 270 F.2d 686 (C.A. 8, 1959). In both of these cases the loss occurred over a number of years and not within a period of a few months. The defendant also cites error in refusing to charge the following: "I charge you that anything which continues over a long period of time cannot be termed an accident, since the word 'accident' is an unforeseen and unexpected event having its origin at some fixed time." It is uncontradicted that the loss sustained by the adjoining landowners in this case did not occur over a long period of time. It was also stated in Ducker v. Central Surety Ins. Corp., 234 S.C. 228, 107 S.E.2d 342 (1959), that it was not necessary that the happening of an accident be a single occurrence identified in time and space. The defendant also excepts to my failure to charge its requests numbers one and seven. Request number one was voluntarily withdrawn at the request of the defendant and request number seven was charged.

■ The defendant moves for a new trial on the ground that it was error to introduce testimony concerning the liability of the defendant since this was to be determined by the allegations of the complaints of the adjoining landowners in the State Court actions. When the insured in a liability policy settles a claim in litigation against him without trial, the questions which are open for consideration in a suit by the insured on the policy include those which relate to coverage, liability and expense. Employers Mut. Liability Ins. Co. of Wis. v. Hendrix, 199 F.2d 53 (C.A. 4, 1952), 41 A.L.R.2d 424. The obligation of the defendant must then be determined with reference to the facts of the case and not by the allegation of the injured party in the suit for damages. American Casualty Co. of Reading v. Denmark Foods, 224 F.2d 461 (C.A. 4, 1955). The defendant apparently takes the position that if it were not bound to defend the State Court action against its insured, then it is not bound to pay any judgment which may have been awarded therein. This position ignores the possibility that the claim may ultimately be established as within the policy coverage. The pleadings are not determinative of the issues and a recovery may be had on grounds not asserted in the complaint by the adjoining landowners. The possibility that recovery in the State Court action may be within the policy coverage cannot be ignored. Harbin v. Assurance Company of America, 308 F.2d 748 (C.A. 10, 1962). This is particularly true in South Carolina where a party may amend his complaint before or after judgment with the leave of the court. See, Sections 10–692, 10–693, South Carolina Code of Laws, 1952. The pleadings created an issue which was properly submitted. Ducker v. Central Surety Insurance Company, 234 S.C. 228, 107 S.E.2d 342 (1959); Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc., 128 S.E.2d 19 (N.C., 1962); Minkov v. Reliance Insurance Co. of Phil., 54 N.J.Super. 509, 149 A.2d 260 (1959).

It is agreed by the defendant that the amount paid by the plaintiffs in settlement of the actions against them and the attorneys' fees and expenses incurred in connection therewith, were fair and reasonable.

For the foregoing reasons, it is my opinion that the defendant's motion for judgment notwithstanding the verdict or in the alternative motion for a new trial, should be denied.

It is, therefore, ordered, that defendant's motion for judgment notwithstanding the verdict, or in the alternative its motion for a new trial, be and the same is hereby denied.